Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| El PUEBLO DE PUERTO RICO Apelado | | *Recurso de Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama |
|---|---|---|
| v. | KLAN202500290 | Caso Núm.: G OP2022G0007 G VI2022G0010 G FJ2022G0013 G LA2022G0067 G LA2022G0068 |
| Alberto J. Rivera Ortiz Apelante | | Sobre: Art. 96 (A), Art. 249 (C), y Art. 268 del Código Penal 2012; Art. 6.14 (B) y Art. 6.14 (A) Ley de Armas de 2020. |

Panel integrado por su presidente, Juez Ronda Del Toro, el Juez Pérez Ocasio y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2026.

Comparece ante nos el señor Alberto J. Rivera Ortiz (en adelante, el "Apelante" o el "Acusado") mediante un *Escrito de Apelación Criminal* instado el 7 de abril de 2025. En su recurso, el Apelante nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, "TPI" o "foro primario") el 2 de abril de 2025. Mediante el referido dictamen, se halló culpable al Apelante por varios delitos tipificados en el Código Penal, así como la infracción de varios artículos de la Ley de Armas de Puerto Rico, y se le sentenció a cumplir una pena total de cuarenta (40) años de reclusión.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

Por hechos ocurridos el 1 de enero de 2022, se acusó al Apelante (t.c.c. Tito) de cinco (5) delitos graves, en específico, de tentativa de asesinato en primer grado, declaración o alegación falsa sobre delito, riesgo a la seguridad u orden público al disparar un arma de fuego, según tipificados en los Art. 93 (a), Art. 268 y Art. 249 (c) del Código Penal de 2012, respectivamente. Además, se le acusó por infringir el Art. 6.14 (a) y (b) de la Ley Núm. 168 – 2020 por disparar o apuntar armas de fuego. También, se realizaron dos (2) denuncias por delitos menos graves bajo el Art. 108 del Código Penal de 2012.

Para la disposición de este caso es indispensable que hagamos un recuento de la prueba desfilada en el juicio. En el caso de marras testificaron un total de treinta y dos (32) testigos, incluyendo al Acusado. Los hechos son los siguientes.

El 1 de enero de 2022, los jóvenes Víctor Mcfarland Cosme, Reinaldo Javier Peña Texidor y Gilberto Omar Rivera Pirela (en adelante, "Mcfarland Cosme", "Peña Texidor" o la "víctima", y "Rivera Pirela", respectivamente) acudieron al Beach Club del Restaurante Puerta del Sol en el Municipio de Salinas.

En la fecha antes mencionada, el aquí Apelante también se encontraba en el lugar. Al día de los hechos, era Teniente Primero de la Policía de Puerto Rico y Director de la División Canina a nivel isla, puesto en el cual llevaba trabajando desde hace dieciocho (18) años.[1] Además, era el dueño y administrador del Restaurante Puerta del Sol[2], cargo que tenía desde el año 2017.[3]

Como parte del testimonio del Acusado, este expresó que en la fecha en que ocurrieron los hechos el negocio estaba lleno a

---

[1] Véase transcripción de la prueba oral, en las págs. 3099-3100.
[2] *Íd.*, pág. 3109.
[3] *Íd.*, pág. 3110.

capacidad y el tiempo de espera de la comida era alrededor de una hora.[4] Posteriormente, mencionó que vio a tres (3) jóvenes sentados en el negocio, refiriéndose a los señores Mcfarland Cosme, Peña Texidor y Rivera Pirela.[5] Según su testimonio, al pasar por detrás de estos jóvenes, ellos le realizaron unos comentarios en el sentido de que: "este aborrecido va a cerrar el negocio"[6], "¿estás aborrecido?"[7] y "nos jodimos con este tipo"[8].

Por su parte, el testimonio de los tres (3) jóvenes los sitúa ya en la barra del local en la cual pidieron unas bebidas alcohólicas, pero la cuenta se tardó en llegar.[9] Según el testimonio del Sr. Rivera Pirela, el Apelante le dice "¿qué miras?". A lo que el Sr. Rivera Pirela le contesta que no lo estaba mirando a él, sino que miraba el ambiente a su alrededor.[10] El Apelante en un tono más fuerte le expresó que, "¿qué dijiste?" y el Sr. Rivera Pirela le responde nuevamente que no lo estaba mirando a él.[11]

Según el testimonio de los tres (3) jóvenes Rivera Pirela[12], Peña Texidor[13], y McFarland Cosme[14], el Apelante les expresó, en palabras del Sr. Rivera Pirela, "vamos para afuera que a los tres me los llevo"[15]. Esto llevó a que el Sr. Peña Texidor emitiera el comentario de que se creía "Hulk ahora".[16]

Luego, el Sr. Peña Texidor comentó que el Apelante le tumbó el trago que tenía en la mano. Surge del testimonio de este último el haber admitido que le tumbó el trago al Sr. Peña Texidor y, como parte del turno de la defensa, este respondió lo siguiente:

---

[4] *Íd.*, pág. 3114.
[5] *Íd.*, pág. 3134.
[6] *Íd.*, pág. 3135.
[7] *Íd.*
[8] *Íd.*, pág. 3137.
[9] *Íd.*, pág. 1574.
[10] *Íd.*, pág. 1575.
[11] *Íd.*
[12] *Íd.*
[13] *Íd.*, pág. 1889.
[14] *Íd.*, pág. 1306.
[15] *Íd.*, pág. 1575.
[16] *Íd.*, pág. 1890.

Testigo Rivera: Ahí es que el del suéter blanco me grita, este...

Lcdo. Gordon: ¿Qué le grita?

Testigo Rivera: "Hulk Ahora", a toda boca allí.

Lcdo. Gordon: ¿Y cómo usted se sintió en ese momento cuando escucha "Hulk ahora"?

Testigo Rivera: Frustrado, cansado.

Lcdo. Gordon: ¿Por qué?

Testigo Rivera: Porque tú estás tratando de llevar algo tranquilo y en paz, y ves que por más que tratas de evitar las cosas, siguen las provocaciones.

Lcdo. Gordon: ¿Qué usted hizo en ese momento?

Testigo Rivera: Yo regresé.

Lcdo. Gordon: Ok.

Testigo Rivera: *Y le tumbé el trago.*

Lcdo. Gordon: ¿Y le tumbó el trago, a quién?

Testigo Rivera: A Reinaldo.

Lcdo. Gordon: ¿Por qué usted le tumba el trago a Reinaldo, que result[ó] ser el del suéter blanco, resulta ser que es Reinaldo, por qué?

Testigo Rivera: Se lo tumbo porque él era el más guapo que estaba, y...

Lcdo. Gordon: ¿En qué sentido?

Testigo Rivera: En el sentido que yo sabía que él podía, de los 3, era el *que podía a lo mejor*, tirarme el trago encima, o hacerme algo que yo pudiera perder la visibilidad y que me dieran una zumba. Yo tomé la decisión de tumbarle el trago. Yo ni lo toqué. *Yo le tumbé el trago bien tumbao.*[17] (Énfasis suplido).

Luego de que el Apelante le tumbara el vaso, el Sr. Reinaldo Peña Texidor se acerca a donde él y el Apelante lo empuja contra la barra. A preguntas del Ministerio Público, el Apelante testificó que:

Fiscal Osorio: Muy bien. ¿Lo cierto es que una vez él se incorpora, en algún momento usted lo empuja?

Acusado: Sí.

Fiscal Osorio: Sí. ¿Y lo empuja contra la barra?

Acusado: Sí.

Fiscal Osorio: ¿Y lo cierto es que cuando lo empuja contra la barra, al momento antes de empujarlo, él a usted no lo había agredido?

---

[17] *Íd.*, págs. 3143-3144.

Imputado: ¿Cómo? No.

Fiscal Osorio: No. ¿Ni lo había empujado a usted?

Acusado: No.

Fiscal Osorio: ¿Ni lo había tocado?

Acusado: No.

Fiscal Osorio: ¿Pero, aun así, usted lo empujó?

Acusado: Sí.[18]

El Sr. Peña Texidor testificó que eventualmente el Apelante le sacó su arma de fuego y le apuntó a la cabeza.[19] Este hecho fue visto por múltiples testigos del establecimiento comercial que testificaron en el juicio. Por lo cual, el Sr. Peña Texidor procede con su mano izquierda a bajarle al Apelante la mano en la que tenía el arma de fuego con la que le estaba apuntando.[20]

Luego de este evento, narra la víctima, el Sr. Peña Texidor, que escuchó un disparo y sintió un calentón en su pierna izquierda, en específico, por el área de la ingle.[21] Según testificó la víctima, el Apelante fue quien efectuó el disparo.[22] Luego de que el Acusado realizara el tiro y el Sr. Peña Texidor cayera al suelo, el Apelante procede a golpearlo en el piso.[23] Lo antes mencionado también fue reconocido por el Apelante durante el turno del Ministerio Público. A preguntas de la fiscalía, este expresó lo siguiente:

> Fiscal Osorio: Per[o], espérese, déjeme hacerle la pregunta, tranquilo. Cuando usted tiene la mano en la Glock, en la izquierda, ¿usted le propina mi [sic] puño a Reinaldo que estaba en el piso?
>
> Acusado: Sí.
>
> Fiscal Osorio: Sí. Pero cuando usted le propina ese puño a Reinaldo para dejarlo aturdido, ¿lo cierto es que Reinaldo ya usted le había tirado el trago?
>
> Imputado: Sí.
>
> Fiscal Osorio: ¿Lo había empujado contra la barra?

---

[18] *Íd.*, págs. 3309-3310.
[19] *Íd.*, pág. 1895.
[20] *Íd.*
[21] *Íd.*, pág. 1896.
[22] *Íd.*, pág. 1897.
[23] *Íd.*

Acusado: Sí.

Fiscal Osorio: ¿Lo había apuntado?

Acusado: Sí.

Fiscal Osorio: ¿Le había dado un tiro, le había disparado?

Acusado: Sí.

Fiscal Osorio: ¿Lo había arrastrado por el piso?

Acusado: Sí.

Fiscal Osorio: ¿Lo había apuntado nuevamente mientras lo arrastraba al final de la barra?

Acusado: Sí.

Fiscal Osorio: ¿Ya él no tenía control de esa arma?

Acusado: No.

Fiscal Osorio: ¿Y usted, aun así, le dio un puño?

Acusado: Sí.[24]

Posteriormente, se presentaron las correspondientes denuncias y se continuó con la celebración de las vistas de Regla 6 y la Vista Preliminar. Así las cosas, el juicio por jurado fue celebrado en las fechas del 12 de febrero de 2024 al 29 de febrero de 2024; 6 de mayo de 2024 al 17 de mayo de 2024; 3 de junio de 2024 al 18 de junio de 2024; 16 de julio de 2024 al 31 de julio de 2024; 2 de agosto de 2024 al 30 de agosto de 2024; 15 de octubre de 2024 al 31 de octubre de 2024; 1 de noviembre de 2024 al 27 de noviembre de 2024; 9 de diciembre de 2024 al 13 de diciembre de 2024; 30 de enero de 2025; y del 3 de febrero de 2025 hasta el 13 de febrero de 2025. Es decir, el juicio tuvo una duración de alrededor de un (1) año.

El 13 de febrero de 2025, el jurado emitió unánimemente su veredicto en el que encontró *Culpable* al Apelante por los delitos del "Art. 249 LA"[25], "Art. 6.14 LA"[26], "Art. 6.14 LA"[27], "Art. 6.05 LA"[28],

---

[24] *Íd.*, pág. 3340.
[25] Véase Autos Originales, pág. 417.
[26] *Íd.*, pág. 418.
[27] *Íd.*, pág. 419.
[28] *Íd.*, pág. 420.

Art. 268 del Código Penal de 2012[29] y el Art. A93 del Código Penal de 2012[30]. (Énfasis suplido).

El 26 de febrero de 2025, el Apelante formuló un escrito titulado *Urgente Solicitud para que se deje sin efecto veredicto de culpabilidad por error grave, perjudicial sustancial e insubsanable en violación a los derechos fundamentales del acusado y el debido procedimiento de ley.*[31] En su escrito adujo que:

> Antes de salir el jurado para el salón de deliberaciones ninguno de los representantes del Ministerio Público solicitó al tribunal que entregara al presidente o a alguno de los jurados los seis pliegos acusatorios o acusaciones que presentaron contra el acusado el 27 de octubre de 2022, y a los cuales se les había dado lectura ante el Jurado el 12 de febrero de 2024, es decir un (1) año antes. Asimismo, el tribunal no ordenó a la secretaria de sala que incluyera las acusaciones entre los documentos que el presidente o alguno de los Jurados se llevaría para el salón de deliberaciones antes de que estos se retirarán a deliberar, para su evaluación y consideración.[32]

Asimismo, argumentó que la entrega de las acusaciones en el proceso de deliberación del jurado se tenía que dar independientemente de que se les haya dado lectura a las acusaciones en corte abierta.[33] Este reconoció que las *acusaciones no son pruebas*, sin embargo, sostuvo que son documentos que se deben llevar en la etapa de la deliberación del jurado.[34] (Énfasis suplido). Además, alegó que la consecuencia que acarrea el no presentarse las acusaciones al jurado, cuando estos iban al salón de deliberaciones, es que se debía dejar sin efecto el veredicto.[35]

Por otro lado, el Apelante señaló que, en la boleta, el jurado erróneamente emitió un veredicto declarándolo culpable por el delito de asesinato en primer grado[36], cuando de la acusación se

---

[29] *Íd.*, pág. 421.
[30] *Íd.*, pág. 422.
[31] *Íd.*, pág. 468
[32] *Íd.*, pág. 478.
[33] *Íd.*, pág. 490
[34] *Íd.*
[35] *Íd.*
[36] *Íd.*, pág. 491.

desprende que el delito por el cual se le acusa es uno de tentativa de asesinato en primer grado.[37] Por lo anterior, alegó que, al habérsele acusado por un delito menor, no se le podía encontrar culpable de un delito mayor al imputado.[38]

Asimismo, en su escrito el Apelante planteó que el jurado lo encontró culpable por un delito codificado en el "Art. 249 LA" cuando la acusación realizada por el Ministerio Público fue por el Art. 249 del Código Penal de 2012. Sobre lo anterior, señaló que:

> "Ese error no es un defecto de forma, eso es otro delito fuera de la competencia del tribunal, siendo esta la expresión verdadera de la opinión de los miembros del jurado, libre de coerción o influencias extrañas, sin que medie error o sorpresa. Como puede apreciarse, dicho veredicto es erróneo no conforme a derecho, justificando así que dicha convicción sea dejada sin efecto inmediatamente.[39]

Por último, expuso que, en los delitos codificados en la Ley de Armas, el Ministerio Público radicó acusación por los Art. 6.14 (a) y 6.14 (b) de la Ley de Armas de 2020[40], pero que el jurado, en su veredicto, encontró culpable al Apelante por el Art. 6.14, pero no especificó los incisos establecidos en dicho estatuto.[41] Por lo cual, al no especificar bajo qué inciso del antes mencionado artículo se encontró culpable al Apelante, este propuso que el jurado lo exoneró de los delitos imputados a la Ley de Armas de 2020.[42]

El 20 de marzo de 2025, el Ministerio Público presentó su *Réplica en oposición a "[u]rgente solicitud para que se deje sin efecto veredicto de culpabilidad por error, grave, perjudicial, sustancial e insubsanable en violación a los derechos fundamentales del acusado y al debido procedimiento de ley"*.[43] En su escrito, la parte Apelada sostuvo que, al finalizar los informes al jurado:

---

[37] *Íd.*
[38] *Íd.*
[39] *Íd.*, pág. 492.
[40] *Íd.*
[41] *Íd.*, pág. 493.
[42] *Íd.*
[43] *Íd.*, pág. 570.

> "[E]l tribunal impartió las instrucciones para la etapa final del Jurado, del *Libro de Instrucciones al Jurado*, conforme las acusaciones presentadas. En la hora y minuto 3:50:27, la Honorable Juez Ortiz Rivera mencionó cada uno de los seis cargos contenidos en los pliegos acusatorios incluyendo el delito de Tentativa de Art. 93 (a) del Código Penal. En la hora y minuto 3:51:00, la Hon. Juez Ortiz Rivera volvió a mencionar y describir a las damas y caballeros de[l] Jurado el delito de Tentativa del Art. 93 (a) del Código Penal y los elementos del delito[.] Luego continúo mencionando cada uno de los otros cinco cargos contenidos en el pliego acusatorio incluyendo sus respectivos elementos [e] incluso[,] en el delito de Tentativa de Asesinato[,] explica el elemento de por qué no se cumple el delito de Asesinato, aduciendo que es por causa ajena a su voluntad. [...] La Hon. Jueza mencionó uno por uno los otros cinco cargos del pliego acusatorio con sus respectivos números de artículos y los elementos de cada uno de los delitos.[44]

Como parte de su argumentación, el Ministerio Público estableció que el Apelante no tenía razón respecto a que se le encontró culpable por un delito diferente al imputado de tentativa de asesinato por el Art. 93 (a). Según ellos, el jurado no podía encontrar al Apelante culpable del delito de asesinato en primer grado ya que ninguna persona falleció y las víctimas de los delitos testificaron durante el juicio.[45]

Luego de evaluar los escritos de las partes y de escuchar sus argumentos en la vista del 2 de abril de 2025, el foro primario declaró No Ha Lugar la moción de la defensa para dejar sin efecto el veredicto del jurado.[46]

Ese mismo día, el TPI emitió su *Sentencia* y estableció las siguientes penas:

> En el caso G OP2022G0007 por infracción al artículo 249(C) del Código Penal de Puerto Rico le impuso una pena de veinte (20) años de reclusión.

> En el caso G VI2022G0010 por infracción al artículo 93(A) en modalidad tentativa del Código Penal de Puerto Rico le impuso pena de veinte (20) años de reclusión.

> En el caso G FJ2022G0013 por infracción al artículo 268 del Código Penal de Puerto Rico le impuso una pena de tres (3) años de reclusión.

---

[44] *Íd.*, pág. 573.
[45] *Íd.*, pág. 579.
[46] *Íd.*, pág. 569.

Estas penas serán cumplidas de forma concurrentes entre sí y consecutivas con:

En el caso G LA2022G0067 por infracción al artículo 6.14(B) de la Ley de Armas de Puerto Rico le impuso una pena de cinco (5) años que conforme al Artículo 6.01 de la Ley de Armas de Puerto Rico se duplica para un total de diez (10) años de reclusión.

En el caso G LA2022G0068 por infracción al Artículo 6.14(A) de la Ley de Armas de Puerto Rico le impuso una pena de cinco (5) años que conforme al Artículo 6.01 de la Ley de Armas de Puerto Rico se duplica para un total de diez (10) años de reclusión.

Estas penas serán cumplidas de forma consecutivas entre sí, consecutivas con las penas anteriores y con cualquier otra pena que esté cumpliendo.[47]

Inconforme con esta determinación, el 7 de abril de 2025, el Apelante presentó un *Recurso de Apelación* ante este foro y realizó nueve (9) señalamientos de error, los cuales son los siguientes:

**A. ERRÓ EL HONORABLE JURADO AL RENDIR UN VEREDICTO DE CULPABILIDAD EN TODOS LOS CARGOS DE NATURALEZA GRAVE, SIN QUE EN NINGÚN MOMENTO DURANTE SU PROCESO DE DELIBERACIÓN LOS MIEMBROS DEL JURADO TUVIERAN ANTE SÍ, O SE LLEVARAN CONSIGO AL SALÓN DE DELIBERACIONES LAS ACUSACIONES O PLIEGOS ACUSATORIOS EN CONTRAVENCIÓN DE LO DISPUESTO EN LA REGLA 140 DE PROCEDIMIENTO CRIMINAL, 34 LPRA AP. II, R. 140, Y SU JURISPRUDENCIA INTERPRETATIVA.**

**B. ERRÓ EL HONORABLE JURADO AL RENDIR UN VEREDICTO DE CULPABILIDAD POR ASESINATO EN PRIMER GRADO CUANDO LA ACUSACIÓN FORMULADA ERA POR TENTATIVA DE ASESINATO EN PRIMER GRADO.**

**C. ERRÓ LA HONORABLE JUEZA AL DECLARAR NO HA LUGAR LA URGENTE SOLICITUD PARA QUE SE DEJARA SIN EFECTO EL VEREDICTO DE CULPABILIDAD ANTE EL ERROR GRAVE, PERJUDICIAL, SUSTANCIAL E INSUBSANABLE, EN VIOLACIÓN A LOS DERECHOS FUNDAMENTALES DEL ACUSADO Y AL DEBIDO PROCEDIMIENTO DE LEY, CUANDO EL JURADO EN NINGÚN MOMENTO EN SU PROCESO DE DELIBERACIÓN NO LLEVÓ NI TUVO CONSIGO LAS ACUSACIONES O PLIEGOS ACUSATORIOS AL SALÓN DE DELIBERACIONES.**

**D. ERRÓ EL HONORABLE JURADO AL RENDIR UN VEREDICTO DE CULPABILIDAD EN EL ARTÍCULO 249 DE LA LEY DE ARMAS DE PUERTO RICO CUANDO LA ACUSACIÓN ERA POR EL ARTÍCULO**

---

[47] *Íd.*, pág. 601.

**249 DEL CÓDIGO PENAL DE PUERTO RICO DEL 2012, SEGÚN ENMENDADO.**

**E. ERRÓ EL HONORABLE JURADO AL RENDIR UN VEREDICTO DE CULPABILIDAD EN EL ARTÍCULO 6.14 DE LA LEY DE ARMAS DE PUERTO RICO CUANDO LAS ACUSACIONES ERAN POR EL ARTÍCULO 6.14 (A) Y 6.14 (B) DE DICHA LEY.**

**F. ERRÓ LA HONORABLE JUEZA AL SENTENCIAR AL APELANTE POR TENTATIVA DE ASESINATO EN PRIMER GRADO CUANDO EL JURADO RINDIÓ UN VEREDICTO CULPABILIDAD DE ASESINATO EN PRIMER GRADO DELITO POR EL CUAL EL APELANTE NUNCA FUE ACUSADO.**

**G. ERRÓ LA HONORABLE JUEZA AL SENTENCIAR AL APELANTE EN EL ARTÍCULO 249 DEL CÓDIGO PENAL DE PUERTO RICO, CUANDO EL JURADO RINDIÓ UN VEREDICTO DE CULPABILIDAD POR EL ARTICULO 249 DE LA LEY DE ARMAS DE PUERTO RICO, SIN QUE EL APELANTE HUBIERA SIDO ACUSADO POR DICHO ARTÍCULO DE LA LEY DE ARMAS.**

**H. ERRÓ LA HONORABLE JUEZA AL SENTENCIAR AL APELANTE EN LOS ARTÍCULOS 6.14(A) Y 6.14(B) DE LA LEY DE ARMAS DE PUERTO RICO, CUANDO EL JURADO RINDIÓ UN VEREDICTO DE CULPABILIDAD POR EL ARTÍCULO 6.14 (DOS CARGOS) SIN ESPECIFICAR LOS INCISOS (A) Y (B) EN LA BOLETA DE VEREDICTO, COMO LO EXIGE EL ORDENAMIENTO JURÍDICO VIGENTE Y EL DEBIDO PROCEDIMIENTO DE LEY.**

**I. ERRÓ EL HONORABLE JURADO AL RENDIR UN VEREDICTO DE CULPABILIDAD EN TODOS LOS CARGOS DE NATURALEZA GRAVE, CUANDO EL MINISTERIO PÚBLICO FALLÓ EN PROBAR MÁS ALLÁ DE DUDA RAZONABLE TODOS LOS ELEMENTOS DE LOS DELITOS IMPUTADOS Y DE LA PRUEBA DESFILADA POR AMBAS PARTES SURGIÓ EVIDENCIA CLARA QUE SOSTENÍA LA TEORÍA DE LEGÍTIMA DEFENSA POR PARTE DEL APELANTE.**

El 4 de noviembre de 2025, la parte Apelante presentó la transcripción estipulada de la prueba oral. Posteriormente, el 4 de diciembre de 2025, dicha parte presentó un *Alegato del Apelante.*

Por su parte, el 25 de febrero de 2026, el Ministerio Público, a través de la Oficina del Procurador General, presentó su *Alegato de El Pueblo de Puerto Rico.*

Con el beneficio de la comparecencia de ambas partes, la transcripción de la prueba oral estipulada y los autos originales, procedemos a resolver el recurso ante nuestra consideración.

**II.**

**A. La acusación**

El Art. II Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico establece que "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma". Art. II, Sec. 11, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 343. Por otro lado, en su contraparte Federal, la Constitución de Estados Unidos dispone en la enmienda sexta que "*[i]n all criminal prosecutions, the accused shall enjoy the right [...] to be informed of the nature and cause of the accusation*". Emda. VI, Const. EE.UU., LPRA, Tomo I.

El Ministerio Público utiliza la acusación o la denuncia como mecanismo para informar el delito imputado. *Pueblo v. Pagán Rojas et al.*, 187 DPR 465, 481 (2012). La acusación es el mecanismo mediante el cual se imputan los delitos graves. *Pueblo v. Vélez Rodríguez*, 186 DPR 621, 628 (2012).

La Regla 34 de Procedimiento Criminal define la acusación como "una alegación escrita hecha por un fiscal al Tribunal de Primera Instancia en la cual se imputa a una persona la comisión de un delito. La primera alegación de parte de El Pueblo en un proceso iniciado en el Tribunal de Primera Instancia será la acusación". 34 LPRA Ap. II, R. 34.

El propósito de la acusación "no es cumplir mecánicamente como si fuera un ritual", sino notificar al acusado del delito imputado, a fin de que pueda preparar adecuadamente su defensa. *Pueblo v. Meléndez Cartagena*, 106 DPR 338, 341 (1977).

**B. Las deliberaciones del jurado**

Según señala la Profa. Dora Nevárez-Muñiz, la deliberación del jurado "[s]e trata de la discusión y evaluación de la prueba por parte del jurado, para culminar con el veredicto sobre la culpabilidad o inocencia del acusado". D. Nevárez Muñiz, *Sumario*

*de Derecho Procesal Penal Puertorriqueño*, 10ª ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2014, pág. 190.

Durante la deliberación del jurado, existen limitaciones sobre los documentos que pueden utilizar. La Regla 140 de Procedimiento Criminal establece que "[a]l retirarse a deliberar, el jurado deberá llevarse consigo todo objeto o escrito admitido en evidencia, *excepto las deposiciones*". 34 LPRA Ap. II, R. 140. (Énfasis suplido). La citada Regla 140 de Procedimiento Criminal, *supra,* tiene su origen en el Art. 274 del Código de Enjuiciamiento Criminal, 34 LPRA sec. 783.[48] El Tribunal Supremo de Puerto Rico ha expresado que el Art. 274 del Código de Enjuiciamiento Criminal, así como los artículos adoptados por diversos estados, le confieren "*discreción al juez para determinar que documentos llevará el jurado al salón de deliberaciones*". *Pueblo v. Ramos Cruz*, 84 DPR 563, 570 (1962). (Énfasis suplido).

Asimismo, nuestro Máximo Foro ha reconocido que una confesión es equivalente a una deposición para propósitos deliberativos del jurado. *Pueblo v. Ramos Cruz, supra,* pág. 571. El fundamento para que el jurado no obtenga los antes mencionados documentos es que:

> "[e]s injusto para el acusado, que el jurado tenga ante sí un documento escrito que puede leer y releer cuantas veces le plazca en el cual el acusado admite la comisión del delito que se le imputa, mientras que, de la prueba desfilada en el juicio en su defensa, el jurado solo tiene el recuerdo de lo que declararon los testigos. Y normalmente tiene más fuerza el documento escrito que se tiene ante la vista, que el recuerdo de un testimonio oral." *Íd.*

Ahora bien, si el Ministerio Público viola la Regla 140 de Procedimiento Criminal de forma que el jurado tenga acceso a las

---

[48] El Art. 274 del Código de Enjuiciamiento Criminal establece que: [a]l retirarse para deliberar, el jurado podrá llevar consigo todos los documentos o escritos (exceptuando las deposiciones) que hayan sido recibidos como pruebas en el proceso, o copias de los archivos público o de los documentos privados que también se hayan presentado como prueba y de cuyos originales, a juicio del tribunal, no deben desprenderse las personas en cuyo poder se hallen. También podrá llevar las instrucciones escritas, si las hubiere.

deposiciones o las confesiones, el juicio *solo podrá ser revocado si hubo un error que conlleve un perjuicio a los derechos del acusado.* (Énfasis suplido). *Pueblo v. Martínez Díaz,* 90 DPR 467, 476-477 (1964); *Pueblo v. Hernández Rodríguez,* 89 DPR 770, 771-772 (1964). En palabras de la Profa. Nevárez Muñiz "no se revocará un caso en apelación por razón de haberse violado la Regla 140, a menos que ello haya ocasionado un perjuicio sustancial al acusado." Nevárez Muñiz, *op. cit.,* pág. 190.

En un *dictum* en *Pueblo v. Vélez Rodríguez, supra,* pág. 636, se expuso como parte de los hechos que uno de los documentos que el jurado se llevó al salón de deliberaciones fueron los pliegos acusatorios.[49] En ese caso, el Tribunal Supremo expresó que:

> "[A]l examinar los hechos del caso ante nuestra consideración, resulta claro que la práctica del Ministerio Público de citar expresamente porciones de la declaración jurada del perjudicado contraviene la doctrina expuesta, en la situación de que la peticionaria decida hacer uso de su derecho a juicio por jurado. Asimismo, *una práctica como la aquí utilizada por el Ministerio Público tiene el efecto de evadir subrepticiamente la prohibición de que las declaraciones juradas — escritas— sean consideradas por el Jurado en el proceso de deliberación, al introducirlas a través del pliego acusatorio. Ello no solo violaría la Regla 140 de Procedimiento Criminal, supra, sino que además laceraría los derechos de la peticionaria y pudiera ocasionar en su día la anulación de un veredicto, en casos en los que se considere como un error perjudicial. Íd.* (Énfasis suplido).

No obstante, en dicho caso no se establece un precedente de que el pliego acusatorio es uno de los documentos que el jurado debe llevar compulsoriamente a la deliberación.[50] La *ratio decidendi* del caso se limita a que el Ministerio Público no puede hacer referencias a citas directas de las declaraciones juradas en la acusación para

---

[49] El Tribunal Supremo ha señalado que "el concepto *obiter dictum* aplica cuando un tribunal emite expresiones innecesarias en un caso o una controversia ante sí, y acerca de interrogantes jurídicas que, propiamente, no le han sido planteadas". *Ortiz v. Panel FEI,* 155 DPR 219, 252 (2001). (Énfasis en el original omitido).

[50] Según la Regla 26.2 del *Libro de Instrucciones al Jurado,* relacionada con la deliberación y veredicto, el juez le entregara evidencia al jurado para que la examinen y le den el valor que consideren adecuado. Además, esta regla expone que se les entregara copia de las acusaciones, recordando que "*no constituye(n) prueba en el caso*". (Énfasis suplido).

luego ponerlas a disposición del jurado, ya que ello, de constituir un error perjudicial, podría conllevar la anulación del veredicto. *Íd.*, págs. 636 y 642.

### C. Denominación incorrecta del delito en el veredicto del jurado

El veredicto "es el consenso del jurado respecto a la inocencia o culpabilidad del acusado. El mismo se presentará por escrito por el presidente del jurado, y deberá constituir la expresión libre y verdadera de la opinión de los miembros del jurado". Nevárez Muñiz, *op. cit.*, pág. 190. La Regla 146 de Procedimiento Criminal, 34 LPRA Ap. II, R. 146, contempla tres (3) escenarios sobre el veredicto que emitirá el jurado. Esto es: lo declarará "culpable", "no culpable" o "no culpable por razón de locura". *Íd.*

El veredicto y el delito por el cual fue acusada la persona se plasmarán en una boleta escrita por el presidente del jurado. El Tribunal Supremo de Puerto Rico ha atendido controversias en las que se han corregido errores clericales en las boletas.

En *Pueblo v. Martínez Díaz*, *supra*, la controversia giraba en torno a que no se estableció expresamente el delito de asesinato en la boleta por el cual se le condenó al apelante y el juez le "ordenó" al presidente del jurado que corrigiera la omisión de la palabra "asesinato" en la conclusión del jurado. El presidente del jurado escribió en la boleta que se encontró al acusado "culpable" en segundo grado sin haber puesto el delito de asesinato. *Íd.*, pág. 471. El *juez de instancia* describió esta omisión como un *"error clerical. Donde dice el grado y no el delito"*. (Énfasis suplido). *Íd.* Nuestro Máximo Foro expuso que, *"[e]n esencia lo importante es determinar cuál ha sido la verdadera intención del jurado"*. *Íd.*, pág. 473 (Énfasis suplido). Asimismo, señala que "[l]a omisión del jurado no desnaturalizó la virtualidad de su intención". *Íd.* El Tribunal Supremo confirmó el veredicto de culpabilidad.

En *Pueblo v. Martínez Ríos*, 109 DPR 303 (1979), se acusó al señor Martínez por transportar y ocultar sustancias controladas, (cargos que fueron archivados) y distribución de sustancias controladas. A pesar de que uno de los cargos fue archivado, el pliego acusatorio que pasó al jurado contenía el cargo por el cual fue procesado y el cargo archivado. *Íd.*, pág. 306. El Tribunal Supremo señaló que esto no perjudicó al acusado, dado que el delito por el cual fue acusado tenía dos (2) modalidades. *Íd.* El jurado emitió su veredicto y encontró culpable al acusado; en específico, concluyeron que "[n]osotros los señores del jurado declaramos al acusado culpable del delito de la Ley de Sustancias Controladas". *Íd.*, pág. 307. El Apelante expuso que el veredicto fue demasiado genérico. *Íd.* Sin embargo, nuestro Máximo Foro resolvió que:

> Es cierto que dicho veredicto no es un modelo de redacción y que los jueces deben instruir a los jurados para que expresen su veredicto en forma más correcta, pero esa incorrección de forma no lo hace nulo. La Regla 146 de Procedimiento Criminal expresamente dispone que el veredicto declarará al acusado 'culpable' o 'no culpable' o 'no culpable por razón de locura'. Dispone dicha regla que no será necesario conformarlo estrictamente a esta terminología. *Solamente exige que la intención del jurado sea clara. No es necesario que el veredicto exprese con precisión técnica la infracción de la ley si expresa claramente que el jurado encontró al acusado culpable.* Éste es el caso de autos. Lo importante es la sustancia—la decisión a que llegó el jurado— y no determinada forma técnica de expresarlo. Si el jurado lo hubiese encontrado inocente así lo hubiese dicho en vez de declararlo culpable. *Íd.* (Énfasis suplido).

Por último, en *Pueblo v. Vélez Torres*, 98 DPR 5 (1969), una de las controversias que tuvo el Tribunal Supremo ante sí era: ¿si se tenía que indicar el artículo o disposición legal bajo el cual se declaró culpable al acusado limitándose el jurado a declarar al apelante "culpable de infracción a la Ley de Narcóticos"? *Íd.*, pág. 8. El Tribunal Supremo expuso que, según la Regla 146 de Procedimiento Criminal, "[n]o es necesario que se haga expresión de la disposición legal por cuya violación se declara culpable al acusado". *Íd.*

**D. Legítima Defensa**

El Código Penal de Puerto Rico de 2012 establece una serie de causas de exclusión de responsabilidad penal, también conocidas como defensas afirmativas. Entre esas defensas se encuentra codificada la legítima defensa.

La legítima defensa "establece una eximente de amplia cobertura para justificar el daño a otra persona o a sus bienes cuando la persona, bienes o derechos del que invoca la defensa o de un tercero están bajo ataque o peligro inminente por parte del que provocó la situación". D. Nevárez Muñiz, *Código Penal de Puerto Rico Comentado,* 3ª ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2015, pág. 52. Esta defensa se encuentra codificada en el Art. 25 del Código Penal de 2012, el cual dispone que:

> *No incurre en responsabilidad penal quien defiende su persona, su morada, sus bienes o derechos, o la persona, morada, bienes o derechos de otros en circunstancias que hicieren creer razonablemente que se ha de sufrir un daño inminente, <u>siempre que haya necesidad racional del medio empleado para impedir o repeler el daño, falta de provocación del que ejerce la defensa, y que no se inflija más daño que el necesario para repeler o evitar el daño.</u>*

> Cuando se alegue legítima defensa para justificar el dar muerte a un ser humano, es necesario creer razonablemente que[,] al dar muerte al agresor, el agredido o la persona defendida se hallaba en inminente o inmediato peligro de muerte o de grave daño corporal. Para justificar la defensa de la morada, vehículo, lugar de negocios o empleo, las circunstancias indicarán una penetración ilegal o que la persona que se halle en la morada, vehículo, lugar de negocios o empleo, tenga la creencia razonable que se cometerá un delito, de acuerdo a lo establecido en el Artículo 25A. Para justificar la defensa de bienes o derechos, las circunstancias indicarán un ataque a los mismos que constituya delito o los ponga en grave peligro de deterioro o pérdida inminente. 33 LPRA sec. 5038. (Énfasis suplido).

Para que proceda la defensa de legítima defensa, deben concurrir los siguientes cinco (5) requisitos:

> "(1) [Q]ue la persona tenga una creencia razonable de que se ha de sufrir un daño inminente; (2) que haya necesidad racional del medio utilizado para impedir o repeler el daño; (3) que no haya provocación de quien

invoca la defensa; (4) que no se inflija más daño que el necesario para repeler o evitar el daño, y (5) que la persona tenga motivos fundados para creer que al dar muerte al agresor se hallaba en inminente o inmediato peligro de muerte o de grave daño corporal." *Reyes Salcedo v. Policía de PR*, 143 DPR 85, 98 (1997); véase, también, D. Nevárez-Muñiz, Derecho Penal Puertorriqueño: Parte General, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1995, págs. 226-227.

El Tribunal Supremo ha destacado que "las circunstancias que concurran para la defensa propia deben *ser suficientes para excitar el temor de una persona razonable*." *Pueblo v. Ríos Rivera*, 88 DPR 165, 168 (1963); *Pueblo v. Morales*, 45 DPR 191, 199 (1933). (Énfasis suplido). En estos casos, el juez debe evaluar "si una persona razonable en la posición del acusado, sabiendo lo que sabía y viendo lo que vio, crea necesario el ultimar al agresor para evitar el daño." *Pueblo v. De Jesús Santana*, 100 DPR 791, 798 (1972).

En lo que respecta al tercer requisito de la defensa, la Profa. Dora Nevárez señala que "[e]ste requisito significa que quien originalmente provoca un ataque, no debe luego beneficiarse de la legítima defensa para repelerlo". Nevárez Muñiz, *op. cit.*, pág. 54. Nuestro Máximo Foro también ha destacado que "una persona no puede valerse de una *situación creada por ella* y que la lleve a matar a otra para salvar su vida o evitar grave daño personal". *Pueblo v. Román Marrero*, 96 DPR 796, 802 (1968). (Énfasis suplido).

### E. Asesinato en primer grado y la tentativa

El Art. 92 del Código Penal de Puerto Rico define el asesinato como "dar muerte a un ser humano a propósito, con conocimiento o temerariamente". 33 LPRA sec. 5141. A su vez, el Art. 93 del Código Penal establece dos modalidades en las cuales se puede cometer asesinato, es decir, en primer o segundo grado. En lo que respecta al asesinato en primer grado, el inciso (a) del antes mencionado artículo establece que será asesinato en primer grado "[t]odo asesinato perpetrado por medio de veneno, acecho, tortura,

estrangulamiento, sofocación o asfixie posicional, *o a propósito o con conocimiento*". 33 LPRA sec. 5142. (Énfasis suplido).

Por otro lado, el Art. 35 del Código Penal establece que "[e]xiste tentativa cuando la persona *actúa con el propósito de producir el delito o con conocimiento de que se producirá el delito*, y la persona realiza acciones inequívoca e inmediatamente dirigidas a la consumación de un *delito que no se consuma por circunstancias ajenas a su voluntad.*" 33 LPRA sec. 5048. (Énfasis suplido). Así, si una persona incurre en tentativa de un delito que conlleve una pena de reclusión por un término fijo de noventa y nueve (99) años, se le impondrá una pena fija por un término de veinte (20) años. 33 LPRA sec. 5049.

## F. Riesgo a la seguridad u orden público al disparar un arma de fuego

El Art. 249 del Código Penal de 2012 tipifica como delito el riesgo a la seguridad u orden público al disparar un arma de fuego. Dicho artículo dispone que:

> Será sancionada con pena de reclusión por un término fijo de veinte (20) años toda persona que, poniendo en riesgo la seguridad u orden público, a propósito, con conocimiento o temerariamente dispare un arma de fuego:
>
> (a) desde un vehículo de motor, ya sea terrestre o acuático; o
> (b) en una discoteca, bar, centro comercial, negocio o establecimiento; o
> (c) en un sitio público o abierto al público. 33 LPRA sec. 5339.

Según la Profa. Nevárez Muñiz, "[e]s elemento del delito que, como resultado del acto, se ponga en riesgo la seguridad de una o varias personas". Nevárez Muñiz, *op. cit.*, págs. 379-380.

### G. Declaración falsa sobre delito

El Art. 268 del Código Penal tipifica como delito la declaración o alegación falsa sobre delito. Este artículo dispone que:

> Toda persona que[,] mediante querella, solicitud, información, confidencia, independientemente que sea

anónima o bajo falso nombre, dirigida a personas o funcionarios con autoridad en ley para hacer investigaciones de naturaleza criminal, declare o alegue falsamente teniendo conocimiento de su falsedad, que se ha cometido un delito, que provoque así el inicio de una investigación encaminada a esclarecerlo, incurrirá en delito menos grave.

Si el hecho alegado falsamente es uno que constituye delito grave, la persona incurrirá en delito grave y será sancionada con pena de reclusión por un término fijo de tres (3) años. 33 LPRA sec. 5361.

### H. Ley de Armas de Puerto Rico de 2020

La Ley de Armas de Puerto Rico de 2020, en su Art. 6.14, establece que:

Incurrirá en delito grave con pena de reclusión por un término fijo de cinco (5) años, toda persona que, salvo en casos de legítima defensa, propia o de terceros, o de actuaciones en el legítimo desempeño de funciones oficiales o actividades legítimas de deportes:

(a) voluntariamente dispare cualquier arma de fuego fuera de los lugares autorizados por esta Ley, aunque no le cause daño a persona alguna; o

(b) intencionalmente apunte hacia alguna persona con un arma de fuego, aunque no le cause daño a persona alguna. 25 LPRA sec. 466m.

### I. Quantum de prueba: "Más allá de Duda Razonable"

La presunción de inocencia es uno de los derechos constitucionales consagrados en nuestra Carta de Derechos. El Artículo II, Sección 11 de la Constitución de Puerto Rico, establece que, en todo proceso criminal, el acusado disfrutará de la presunción de inocencia. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Asimismo, nuestro ordenamiento procesal penal reconoce esta normativa al establecer que en los procesos criminales se presumirá inocente al acusado mientras no se pruebe lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, R. 110. Para rebatir dicha presunción, es necesario presentar evidencia que establezca su culpabilidad más allá de duda razonable. Regla 110(F) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 110(F); *Pueblo v. Toro Martínez,* 200 DPR 834, 855-856 (2018), citando a

*Pueblo v. García Colón I,* 182 DPR 129, 174 (2011); *Pueblo v. Irizarry,* 156 DPR 780, 786 (2002); *Pueblo v. Cabán Torres,* 117 DPR 645, 652 (1986).

El Estado tiene el peso de la prueba, por lo que le corresponde presentar evidencia sobre la existencia de todos los elementos del delito y su conexión con el acusado. *Pueblo v. Toro Martínez, supra,* pág. 856, citando a *Pueblo v. García Colón I, supra,* pág. 174; *Pueblo v. Santiago et al.,* 176 DPR 133, 143 (2009); *Pueblo v. Rivera Ortiz,* 150 DPR 457, 462 (2000); *Pueblo v. Ramos y Álvarez,* 122 DPR 287, 315–316 (1988).

No obstante, no se requiere que se establezca la culpabilidad del acusado con certeza matemática. *Pueblo v. Maisonave Rodríguez,* 129 DPR 49, 71 (1991); *Pueblo v. Bigio Pastrana,* 116 DPR 748, 761 (1985). Lo que le corresponde al Estado es presentar prueba satisfactoria y suficiente en derecho, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. De Jesús Mercado,* 188 DPR 467, 475 (2013); *Pueblo v. García Colón I, supra,* págs. 174-175; *Pueblo v. Irizarry, supra,* pág. 787; *Pueblo v. Maisonave Rodríguez, supra,* pág. 65; *Pueblo v. Cabán Torres, supra,* pág. 652.

La determinación de que se incumplió con el *quantum* de prueba más allá de duda razonable es una cuestión de raciocinio, producto de todos los elementos de juicio del caso. *Pueblo v. De Jesús Mercado, supra,* págs. 475-476; *Pueblo v. Irizarry, supra,* pág. 788. La duda razonable que impide rebatir la presunción de inocencia no es una meramente especulativa o imaginaria o cualquiera posible, se trata de la insatisfacción con la prueba, conocida como duda razonable. *Pueblo v. De Jesús Mercado, supra; Pueblo v. García Colón I, supra,* pág. 175. Esa duda razonable existe cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba de cargo presentada.

*Pueblo v. Santiago et al., supra*, pág. 142; *Pueblo v. Irizarry, supra,* pág. 788; *Pueblo v. Maisonave Rodríguez, supra*, pág. 65; *Pueblo v. Cabán Torres, supra.*

Por tanto, "para que se justifique la absolución de un acusado, la duda razonable debe ser el resultado de la consideración serena, justa e imparcial de la totalidad de la evidencia del caso o de la falta de prueba suficiente en apoyo de la acusación." *Pueblo v. Santiago et al., supra*, págs. 142-143.

### J. Deferencia judicial en la apreciación de la prueba

Siempre que se haya satisfecho el *quantum* de prueba y se haya demostrado la culpabilidad del acusado más allá de duda razonable, los foros apelativos deben guardar deferencia a la determinación de culpabilidad del foro primario. Así, al evaluar la prueba documental o pericial sobre la que pasó juicio el tribunal sentenciador, el foro revisor se encuentra en igual posición para evaluar las conclusiones de hechos fundamentadas en este tipo de prueba. *Santiago Ortiz v. Real Legacy et al,* 206 DPR 194, 219 (2021). Por ello, se ha establecido que el foro apelativo tiene la facultad de adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, e incluso puede descartarla, aunque resulte técnicamente correcta. *Íd.*

Por otro lado, es norma reiterada que nuestro esquema probatorio está revestido por un manto de deferencia hacia las determinaciones de los juzgadores de primera instancia sobre la prueba testifical ante su consideración. *Pueblo v. De Jesús Mercado, supra*, págs. 477-478. Más aún cuando el planteamiento sobre la insuficiencia de la prueba se reduce a la credibilidad de los testigos, la deferencia está más que justificada porque existe un principio inquebrantable de que es el foro sentenciador el que se encuentra en mejor posición para hacer esa evaluación y adjudicación. *Pueblo v. Toro Martínez, supra*, pág. 857; *Pueblo v. De Jesús*

*Mercado, supra*, pág. 479; *Pueblo v. García Colón I, supra*, pág. 182; *Pueblo v. Torres Rivera,* 137 DPR 630, 640-641 (1994); *Pueblo v. Cabán Torres, supra*, 654.

El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Pueblo v. Toro Martínez, supra,* págs. 857-858; *Pueblo v. García Colón I, supra*, pág. 165. Por esto, como regla general, un tribunal revisor tiene vedado intervenir con la adjudicación de credibilidad de los testigos. *Pueblo v. Toro Martínez, supra*, pág. 858; *Pueblo v. De Jesús Mercado, supra*, pág. 478; *Pueblo v. García Colón I, supra*, pág. 165; *Pueblo v. Cabán Torres, supra.*

Los foros apelativos solo intervendrán y descartarán la credibilidad que el juzgador adjudicó a los testigos, cuando actuó movido por pasión, prejuicio, parcialidad o incurrió en un error manifiesto en su adjudicación. *Pueblo v. Toro Martínez, supra*; *Pueblo v. García Colón I, supra*, pág. 166; *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987); *Pueblo v. Cabán Torres, supra.*

En ese sentido, como foro revisor, al evaluar una determinación sobre una conducta criminal debemos tener presente que la apreciación de la prueba corresponde al foro sentenciador, salvo que se deba revocar porque surgió de una valoración apasionada, prejuiciada o parcializada, o el dictamen es manifiestamente erróneo. *Pueblo v. Toro Martínez, supra*; *Pueblo v. Santiago et al., supra*, pág. 148; *Pueblo v. Irizarry, supra*, pág. 789.

Un juzgador incurre en pasión, prejuicio o parcialidad, cuando actúa movido por inclinaciones personales. *Pueblo v. Toro Martínez, supra*, pág. 859, citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013). Tales motivaciones tienen que

llevar al juzgador a adoptar posiciones de preferencia o rechazo hacia las partes o sus causas sin admitir cuestionamientos y sin importar la prueba recibida en sala, e incluso sin que siquiera se someta prueba alguna. *Íd.*

A su vez, las conclusiones del foro revisado son erróneas cuando el foro revisor analiza la totalidad de la prueba y queda convencido de que sus conclusiones confligen con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Íd.*; *Dávila Nieves v. Meléndez Marín, supra,* pág. 772, citando a *Abudo Servera v. ATPR,* 105 DPR 728, 731 (1977).

Finalmente, el foro primario incurre en un error manifiesto, cuando su apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. *Pueblo v. Toro Martínez, supra*; *Pueblo v. Irizarry, supra,* pág. 816.

**III.**

En su *Escrito de Apelación Criminal,* el Apelante formuló nueve (9) señalamientos de error. Por estar estrechamente relacionados, se discutirán de forma conjunta. Comenzamos con los señalamientos de error A y C.

En síntesis, el Apelante plantea que el foro primario erró al no permitir que el jurado se llevara los pliegos acusatorios al salón de deliberaciones. No le asiste la razón.

En nuestro ordenamiento no existe disposición legal ni precedente jurisprudencial que establezca que las acusaciones deban formar parte de los documentos que el jurado puede llevar consigo durante sus deliberaciones. De hecho, el propio Apelante reconoce que no existe una regla procesal que así lo exija.[51] Tampoco surge tal obligación de forma implícita.

---

[51] Véase *Alegato del Apelante,* en la pág. 155.

La Regla 140 de Procedimiento Criminal, *supra,* dispone que el jurado podrá llevar consigo aquellos objetos o escritos admitidos en evidencia, con excepción de las deposiciones. La acusación no constituye evidencia, sino el mecanismo mediante el cual se informa al imputado del delito que se le atribuye. Por consiguiente, no forma parte de los documentos que el jurado deba considerar durante el proceso deliberativo.

El Apelante invoca lo expresado en *Pueblo v. Vélez Rodríguez, supra,* para sostener que los pliegos acusatorios pueden acompañar al jurado. Sin embargo, como señala la parte Apelada, tal expresión constituye un *dictum* y no establece norma vinculante. La controversia en dicho caso no versaba sobre la obligación de que el jurado examine el pliego acusatorio en sus deliberaciones.

Por otro lado, el Tribunal Supremo ha reconocido que corresponde al foro primario determinar, dentro de su discreción, cuáles documentos acompañarán al jurado. *Pueblo v. Ramos Cruz, supra.* El Apelante no demostró que el foro primario abusara de dicha discreción.

Aun si se asumiera la existencia de algún error, el Apelante tampoco demostró que ello le ocasionara perjuicio sustancial. La normativa aplicable exige que, para justificar la revocación de una sentencia, debe acreditarse un perjuicio real al acusado. Incluso en situaciones donde se ha permitido indebidamente el acceso del jurado a documentos prohibidos, el Tribunal Supremo ha resuelto que no procede la revocación automática en ausencia de perjuicio. Véase *Pueblo v. Hernández Rodríguez, supra.*

En consecuencia, la ausencia de los pliegos acusatorios en la sala de deliberaciones no constituye fundamento para invalidar el veredicto.

Tampoco procede la aplicación de la doctrina de error extraordinario o *"plain error".* La Regla 106 de Evidencia, 32 LPRA

Ap. VI, R. 106, se circunscribe a la admisión o exclusión errónea de evidencia, lo cual no está presente en este caso. La acusación no es evidencia, sino un instrumento de notificación del delito imputado.

Resuelto lo anterior, pasamos a examinar conjuntamente los señalamientos de error B, D, E, F, G y H, los cuales giran en torno a alegadas imprecisiones en la boleta de veredicto.

El Apelante sostiene que el jurado incurrió en error al no consignar con exactitud técnica los delitos o incisos correspondientes. No le asiste la razón.

Es norma reiterada que lo determinante en un veredicto es la intención del jurado, no la perfección técnica en su redacción. *Pueblo v. Martínez Díaz, supra*, pág. 473. La Regla 146 de Procedimiento Criminal, *supra*, no exige que el veredicto contenga una formulación técnica y precisa del delito, sino que refleje claramente la determinación de culpabilidad o inocencia.

En *Pueblo v. Martínez Ríos, supra*, pág. 307, el Tribunal Supremo resolvió que un veredicto no se invalida por deficiencias formales si de su contenido se desprende con claridad la intención del jurado. Lo importante es la sustancia de la determinación, no su forma. *Íd.*

En el presente caso, el jurado emitió un veredicto de culpabilidad en todos los cargos. Las imprecisiones señaladas —como la omisión de la palabra "tentativa", la falta de especificación de incisos en la Ley de Armas o la referencia incorrecta a un estatuto— constituyen errores de forma que no desvirtúan la intención del jurado.

El contexto del caso, las instrucciones impartidas por el tribunal y la totalidad del proceso evidencian que el jurado comprendió los cargos y emitió su determinación de culpabilidad conforme a la prueba presentada. Por ello, no procede invalidar el veredicto por tales imprecisiones.

Finalmente, atendemos el señalamiento de error relacionado con la suficiencia de la prueba y la alegada legítima defensa.

Tras examinar la totalidad de la evidencia, concluimos que el Ministerio Público probó la culpabilidad del Apelante más allá de duda razonable.

Surge de la prueba que el Apelante inició la confrontación al derramar la bebida del perjudicado y empujarlo sin haber sido agredido previamente. Posteriormente, utilizó un arma de fuego y efectuó un disparo que hirió a la víctima. Estos hechos fueron corroborados por múltiples testimonios, incluyendo admisiones del propio Apelante.

La defensa de legítima defensa requiere, entre otros elementos, la ausencia de provocación por parte de quien la invoca. Art. 25 del Código Penal de Puerto Rico, *supra*. Este requisito no se cumple en el presente caso. La conducta del Apelante —al iniciar el altercado y escalar la confrontación— constituye provocación suficiente para excluir la aplicación de dicha defensa.

En consecuencia, no procede la absolución bajo la teoría de legítima defensa.

Por todo lo anterior, los señalamientos de error carecen de mérito.

**IV.**

Por los fundamentos antes expuestos, se ***confirma*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones